**[Cite as *State v. Hill*, 2013-Ohio-2016.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

ARTHUR S. HILL

      Defendant-Appellant


Appellate Case No.    25274

Trial Court Case No.   2011-TRD-16887

(Criminal Appeal from
 Municipal Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 17th day of May, 2013.

. . . . . . . . . . .

ANDREW D. SEXTON, Atty. Reg. No. 0070892, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

BRIAN A. MUENCHENBACH, Atty. Reg. No. 0088722, 130 W. Second Street, Suite 2100, Dayton, Ohio 45402-1505
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Arthur Hill, appeals from his conviction and sentence on charges of Hit Skip, in violation of Dayton Revised Code of General Ordinances 73.01; Driving a Motor Vehicle without a License, in violation of R.C. 4510.12; and Failing to Stop within an Assured Clear Distance, in violation of Dayton Revised Code of General Ordinances 71.50.[1]

{¶ 2} Hill contends that his conviction was against the manifest weight of the evidence. He further contends that trial counsel rendered ineffective assistance of counsel by failing to move for acquittal at the end of the trial.

{¶ 3} We conclude that the conviction was not against the manifest weight of the evidence. The trial court concluded that the defendant's testimony had little credibility, and the court was in the best position to view the credibility of the witnesses. A review of the evidence also indicates that this is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶ 4} We additionally conclude that trial counsel did not render ineffective assistance of counsel, because a "not guilty" plea preserves the right to argue sufficiency of the evidence on appeal. Furthermore, the State presented adequate evidence on each element of the offenses to sustain the judgment as a matter of law. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 5} On October 29, 2011, at about 10:00 p.m., Gregory Brooks was traveling north

---

[1] Hill is not challenging his conviction for driving without an operator's license, and that matter is not before us.

on Interstate 75, in Dayton, Ohio. Although the interstate normally permitted three lanes of travel, one lane was closed, due to construction.

{¶ 6} Brooks had originally entered Interstate 75 from State Route 35, at a speed of approximately 40 miles per hour. However, about two minutes after Brooks merged into the center lane on Interstate 75, traffic began to come to a stop fairly quickly. Brooks put on his brakes and almost slowed to a stop. When he looked in his rear-view mirror, he saw headlights going from his right to the left, and then felt a huge jolt, like someone had hit him. Immediately after that happened, Brooks saw that the vehicle had stopped. He thought the person was going to stop and exchange information. As a result, he pulled into the left lane, where the construction cones were.

{¶ 7} Instead of stopping, the headlights darted around from Brooks' left to his right and the vehicle, a dark-colored SUV, sped down the highway. Brooks then followed the vehicle, which got off on the exit to First Street. Brooks continued to follow the vehicle and was able to ascertain that it was a late 1980's or early 1990's Chevrolet Blazer. The color of the Blazer was dark, and it looked black at night. Brooks also was able to get the license plate number of the Blazer.

{¶ 8} During Brooks' pursuit, the Blazer stopped at the first three traffic lights, then increased in speed and ran about three traffic lights. After obtaining the make and model of the Blazer and the license plate number, Brooks went to the airport to pick up his wife. He contacted the police on the way home to report the accident. Brooks met briefly with an officer that night, and then also met the next day with Dayton Police Officer, Shena Lally. Lally saw the damage to Brooks' vehicle, which was in the rear on the driver's side. Lally also ran the

–4–

license plate number of the Blazer and obtained the owner's name and address. In addition, Lally made a broadcast for the vehicle as a suspect vehicle. Lally told Brooks she would make a crash report and that hit-and-run detectives would follow up.

{¶ 9} Dayton Police Officer, Derric McDonald, handled the case thereafter. McDonald located the owner of the vehicle. As a result of McDonald's conversation with the owner, Arthur Hill and the owner met with McDonald about seven days after the accident. Hill brought the Blazer to the interview, and admitted that he had been driving the vehicle northbound on Interstate 75 at the time of the accident.

{¶ 10} Hill gave McDonald his version of events, which did not include having been in an accident. After the interview, McDonald took photos of the Blazer and concluded that the damage on the right front quarter panel was consistent with how Brooks had said the accident happened. After seeing the damage, McDonald questioned Hill about the version of events he had related, but Hill maintained that the damage to the Blazer was "old damage." McDonald then cited Hill. When McDonald checked the status of Hill's driving privileges, he found that Hill's driver's license was suspended at the time of the accident.

{¶ 11} Hill testified at trial, and indicated that he was traveling northbound on Interstate 75 on the night in question, when he saw a vehicle in front of him going from the right to the left, and then come to a complete stop. Hill also went off to the left, to avoid the car, and hit a barrel in the left lane. This happened right by the exit to First Street. The car that was ahead of Hill then shot straight off the exit. Hill followed the car off the exit because he was planning to get off the interstate anyway.

{¶ 12} Hill testified that he did not see that particular vehicle again after he got off the

highway. However, another vehicle (apparently Brooks' car) was following him. Hill assumed the other driver was following him because the driver thought he had done something wrong. However, Hill did not feel obliged to stop, because he was not involved in the collision and had not done anything wrong. Eventually, the other driver stopped following Hill. Hill also testified that the scratches on the right side of the Blazer were caused by contact with the side of the garage.

{¶ 13} At Hill's election, the matter was tried to the court. After hearing the testimony, the trial court specifically stated that the complainant's testimony was credible, and that Hill's testimony had little credibility. The trial court found Hill guilty as charged, and sentenced him to 180 days in jail for Driving with No Operator's License, with 180 days suspended; 180 days in jail for the Hit Skip, with 180 days to be served on electronic home detention; and zero days in jail for the Assured Clear Distance Violation. The court also imposed fines of $375, plus court costs. Hill appeals from the judgment of the trial court.

II. Was the Judgment Against the Manifest Weight of the Evidence?

{¶ 14} Hill's First Assignment of Error states that:

The Judge's Decision Was Against the Manifest Weight of the Evidence.

{¶ 15} Under this assignment of error, Hill contends that the trial court's judgment was against the manifest weight of the evidence because no evidence was presented to indicate that Hill failed to stop within an assured clear distance of Brooks' car. Hill also contends that Brooks did not see Hill's vehicle hit his car, and simply gave chase through the streets of Dayton before coming upon Hill's car.

{¶ 16}   "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "   *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).   "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' "   *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17}   In *State v. Peterson*, 10th Dist. Franklin No. 12AP-646, 2013-Ohio-1807, ___ N.E.2d ___, the Tenth District Court of Appeals observed that:

> In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses.   *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6.   However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' "   *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).   Accordingly, we afford great deference to the jury's determination of witness credibility.   (Citations omitted.)   *Peterson* at ¶ 12.

{¶ 18}   We have reviewed the entire record, including the trial transcript and exhibits,

and cannot conclude that the trier of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal.

{¶ 19}   Hill was convicted of having violated Dayton Revised Code of General Ordinances 71.50, which provides that:

> No person shall operate a motor vehicle, motorized bicycle, or trackless trolley at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle or trackless trolley in and on any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.

{¶ 20}   Hill was also convicted of having violated Dayton Revised Code of General Ordinances 73.01(A), which states that:

> In case of accident to or collision with persons or property on any of the highways, * * * due to the driving or operation thereon of such vehicle or trackless trolley, the person so driving or operating such vehicle or trackless trolley, having knowledge of such accident or collision, shall immediately stop his vehicle or trackless trolley at the scene of the accident or collision and shall remain at the scene of the accident or collision until he has given his name and address, and, if he is not the owner, the name and address of the owner of such vehicle or trackless trolley, together with the registered number of such vehicle or trackless trolley, to any person injured in such accident or collision or to the operator, occupant, owner, or attendant of any vehicle or trackless trolley damaged in such accident or

collision, or to any police officer or a special policeman, at the scene of such accident or collision.

{¶ 21} As was noted, the complaining witness, Brooks, testified that he felt a huge jolt when he stopped on Interstate 75 after a slowdown in traffic. Before the jolt, Brooks saw headlights behind him going from the right to the left. Although he anticipated that the vehicle that hit him would stop, it did not. Brooks then pursued the vehicle and was able to obtain the make and model of the vehicle, as well as its license plate number. Brooks testified that he was very confident that the vehicle he pursued was the one that had hit the rear of his car. In addition, the damage to Hill's car was consistent with the account that Brooks offered.

{¶ 22} It is true that Hill denied being involved in the accident, although he did admit that his vehicle went to the left in an attempt to avoid a collision. This latter fact is consistent with Brooks' testimony. Hill claimed at trial, however, that he followed the vehicle in front of him off the exit, and that Brooks' car was not the vehicle that had been in front. This is inconsistent with Brooks' story, and the trial court was entitled to choose which witness to believe.

{¶ 23} Notably, the trial court did not find Hill credible. In fact, the court remarked, when finding Hill guilty, that Hill's testimony did not make sense. In this regard, the court noted that Hill had first said that he was in a lane of travel heading north, but then said he intended to get off the highway at the exit. However, Hill was still in the lane of travel, not the exit lane, and did not get off the highway until after he hit something.

{¶ 24} The trial court was in the best position to assess the credibility of the witnesses, and this is not the exceptional case in which the evidence weighs heavily against the conviction.

Accordingly, the First Assignment of Error is overruled.

### III. Did Trial Counsel Render Ineffective Assistance of Counsel?

{¶ 25}   Hill's Second Assignment of Error is as follows:

Mr. Hill Was Deprived of His Sixth Amendment Right to Effective Assistance of Counsel When Counsel Failed to Renew the Rule 29 Motion to Dismiss at the Close of All Evidence, Thereby Limiting Access to Appellate Review.

{¶ 26}   Under this assignment of error, Hill contends that his trial attorney rendered ineffective assistance of counsel by failing to move for acquittal under Crim.R. 29 at the close of all the evidence.  Hill contends that his attorney's failure was prejudicial because it precludes him from raising this matter on appeal.

{¶ 27}   "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice.  *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.   Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness."  *State v. Matthews,* 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.).

{¶ 28}   As an initial matter, we do not agree that the sufficiency issue was waived.   The Supreme Court of Ohio has held that a defendant's "not guilty" plea preserves the right to object to an alleged insufficiency of evidence, even if the matter is not raised at trial.  *See, e.g.*, *State v.*

*Carter,* 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992), and *State v. Jones*, 91 Ohio St.3d 335, 346-347, 744 N.E.2d 1163 (2001). *Accord*, *State v. Rochowiak*, 2d Dist. Miami No. 2008 CA 12, 2009-Ohio-2550, ¶ 24 (also noting that even if a defendant could waive the sufficiency issue, it would be subject to a plain error analysis). Accordingly, trial counsel did not render ineffective assistance of counsel by failing to renew the Crim.R. 29 motion at the end of the evidence.

{¶ 29} On the merits of the sufficiency issue, we note that "[a] sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 30} "The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259: 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Cherry* at ¶ 9.

{¶ 31} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency."

(Citation omitted.)  *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11.

 As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."  *State v.  Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

**{¶ 32}**   We have already concluded that the conviction was not against the manifest weight of the evidence.  For the reasons previously discussed, the State presented adequate evidence to sustain the judgment as a matter of law.

**{¶ 33}**   Hill's Second Assignment of Error is overruled.

## IV.   Conclusion

**{¶ 34}**    All of Hill's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J. and DONOVAN, J., concur.

Copies mailed to:

Andrew D. Sexton
Brian A. Muenchenbach
Hon. Christopher D. Roberts