[Cite as *State v. Hudson*, 2013-Ohio-2351.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                :

    Plaintiff-Appellee                      :               C.A. CASE NO.     2011 CA 100

v.                                           :               T.C. NO.     07CR926

RAYSHAUN HUDSON                              :               (Criminal appeal from
                                                             Common Pleas Court)
    Defendant-Appellant                    :

                                             :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the    7th    day of     June    , 2013.

· · · · · · · · · ·

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, 50 E. Columbia St., 4th Floor, P.O. Box 1608, Springfield, OH 45501
    Attorney for Plaintiff-Appellee

ADAM JAMES STOUT, Atty. Reg. No. 0080334, 2600 Far Hills Ave., Suite 315, Dayton, OH 45419
    Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FROELICH, J.

    **{¶ 1}**    Rayshaun Hudson was convicted after a jury trial in the Clark County Court of

Common Pleas of two counts of felonious assault, two counts of tampering with evidence, one count of possession of drugs, one count of possession of criminal tools, one count of harassment with a bodily substance, and one count of failure to comply with an order or signal of a police officer. The trial court sentenced Hudson to an aggregate term of 42 years in prison.

{¶ 2} Hudson contends that he was denied due process when the trial court refused to continue the trial in order to await a pending competency examination. Hudson also contends that the trial court erred in sentencing him on two firearm specifications and to consecutive terms for the two felonious assault charges. Finally, Hudson maintains that his conviction for tampering with evidence (a weapon) was against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 3} At around 9:00 a.m. on September 14, 2007, Rayshaun Hudson picked up Stacey Delaney at Delaney's home in Trotwood, Ohio. Hudson and Delaney were business and social acquaintances, and Hudson sometimes asked Delaney to ride around with him. Delaney was home quite a bit at that point because he had hurt his back. On this particular day, Hudson intended to drive to Indianapolis to look for his girlfriend, who was pregnant.

{¶ 4} On the way to Indianapolis, Hudson was driving erratically and very fast, despite Delaney's request that he slow down. Once they reached Indianapolis, Hudson could not find his girlfriend, so the two men began to drive back home at around 2:00 or 2:30 p.m. On the way back, Hudson continued to drive erratically. Hudson was snorting cocaine and was drinking beer and Wild Irish Rose. When the two men arrived back in Ohio, they ran out of gas. They were assisted by the Clay Township police, who drove Delaney to a gas station. Delaney knew that

Hudson carried a pistol, so he rode with the police to get the gas while Hudson remained with his vehicle.

{¶ 5} When Hudson and Delaney finally arrived back in the Dayton area, they rode around some more while Hudson did his "little transactions." By this time, it was around 4:00 or 5:00 p.m., but Hudson would not take Delaney home. Consequently, Delaney got out of the truck at a gas station and began walking home. Delaney eventually got back in the truck after Hudson promised to take him home. However, instead of doing so, Hudson drove to Springfield, Ohio.

{¶ 6} When they arrived in Springfield, Hudson stopped in a large parking lot, and the two men got in a dispute. According to Delaney, Hudson was trying to give him money, but Delaney refused it. Apparently, some money blew out of the window. Hudson was also upset because he thought that Delaney had taken his gun. Before they left the parking lot, Hudson shot Delaney in the knee. Hudson was looking at Delaney like he didn't recognize him. When Delaney asked Hudson why he had shot him, Hudson would not say why. Hudson said, "I feel like murder." Hudson then continued to drive around Springfield, pulling into alleys, putting the gun to Delaney's side, and talking about the fact that he felt "like murder." Eventually, Hudson drove the wrong way down a one-way street with a car coming toward them. Delaney reached over for the steering wheel because he thought they were going to collide with the car. After they passed the car, Hudson shot Delaney again, this time in the calf.

{¶ 7} After additionally shooting at a pedestrian, Hudson stopped at an Advance Auto parking lot. By that point, Delaney had lost a lot of blood. When Hudson pulled up to the back of the parking lot, he took his hand off the pistol and Delaney grabbed the pistol. When Hudson attempted to get the pistol back, it went off. Hudson and Delaney struggled over the pistol, went

out the passenger door of the truck, and ended up on the ground, in the parking lot, fighting over the gun. Four or five men who were standing in the parking lot came over during the struggle, and heard one of the struggling men calling for help. They heard one of the two men yell out, "He shot me, he's got a gun."

{¶ 8} The men in the parking lot called 911, and after a few minutes, Springfield Police Officer Joseph Lewis responded. Delaney had heard the men say that they had called the police. Delaney heard sirens, and when he saw a police car come skidding to a stop about ten to fifteen feet away, he let go of the gun. Delaney then saw that a policeman had his gun out and was yelling, "Halt, halt." At that point, Hudson stood up with the gun and got back in the truck.

{¶ 9} Officer Lewis testified that as he pulled into the lot, he could see Hudson standing over Delaney. Lewis also saw that Hudson's arm was extended, but he could not see what was in his hand. Lewis then observed Hudson running to a truck while putting something in his waistband. Although Lewis ran up and tried to smash out the driver's side window to extract Hudson, Hudson was able to escape. Hudson backed up and sped off through an apartment complex located next to the Advance Auto parking lot. Hudson then proceeded eastbound on High Street at a very high rate of speed.

{¶ 10} By that point, Springfield Police Officer Gregory Garman had arrived in his cruiser. Officers Garman and Lewis pursued Hudson through town while he drove at very high rates of speed, turning his lights off and going left of center several times. At one point, Hudson crossed the median, went westbound in the eastbound lane, turned around, and went through a Wal-Mart parking lot. Although the police used stop sticks, they were not successful, because Hudson drove over the curb to evade them. The officers then lost sight of Hudson for a time.

Eventually, however, Springfield Police Officer Jeffrey Williams was flagged down by several people who said that the fleeing person was in the area of East Pleasant Street. Officer Williams drove down that block and saw a man standing at the corner. When Williams exited from his cruiser, Hudson started running eastbound down the sidewalk along a fence line.

{¶ 11} Officer Williams saw Hudson throw something over the fence while he was running. Eventually, after Hudson slowed down, Williams and another officer tackled and handcuffed him. No firearm was found either in the truck or on Hudson's person. When Williams went back to where Hudson had thrown something over the fence, he found a plastic bag containing a substance that was later identified as crack cocaine.

{¶ 12} Hudson was taken to the hospital because he was very intoxicated or under the influence of some substance and needed medical treatment. When Hudson refused to allow medical staff to pump his stomach, Springfield Police Officer Kevin Hoying assisted the medical staff by holding Hudson's head. Hudson eventually slipped free and spit at Hoying.

{¶ 13} In the meantime, Delaney had been transported to the hospital, where he received surgery for his gunshot wounds, including reconstruction of a bone that supported the inside of his knee. Delaney identified Hudson as his assailant, and Hudson's hands also tested positive for gunshot residue. No gun was found in the area where Hudson and Delaney had been struggling.

{¶ 14} Hudson was charged with various crimes, including the two felonious assault charges, two counts of tampering with evidence, possession of drugs, possession of criminal tools, harassment with a bodily substance, and failure to comply with a signal or order of a police officer. Firearm specifications were also included. After a jury trial, Hudson was found guilty on all charges, and he was sentenced to a total of 42 years in prison. Hudson appeals from his

conviction and sentence.

## II.

{¶ 15}   Hudson's First Assignment of Error states that:

APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT DENIED MR. HUDSON A CONTINUANCE OF THE TRIAL IN ORDER TO AWAIT A PENDING COMPETENCY EVALUATION.

{¶ 16}   In his first assignment of error, Hudson contends that the trial court abused its discretion by denying his request for a continuance of the trial in order to await a second pending competency evaluation that was ordered in a contemporaneous case in Montgomery County, Ohio.[1]

{¶ 17}   "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge.   An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion."   (Citations omitted.)   *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981).   In *Unger*, the Supreme Court of Ohio noted that when evaluating requests for continuances, courts should consider the following factors:

[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is

---

[1] Hudson had been charged with a number of serious felonies in Montgomery County, based on a high-speed chase that occurred in June 2008, after Hudson was released on bond by Clark County.   Hudson was later found guilty of these crimes and was sentenced to 85 years in prison.   *See State v. Hudson*, 2d Dist. Montgomery No. 23328, 2010-Ohio-1622, ¶ 1-3.   In April 2010, we affirmed Hudson's convictions for the high-speed chase, during which a police officer had been seriously injured.   We also affirmed Hudson's convictions on charges in two other Montgomery County cases.   One case involved a robbery, and the other involved Hudson's failure to comply with an officer's order to stop.   In the latter case, Hudson had allegedly discharged a gun into a home.   *Id.*

dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

(Citation omitted.)   *Id.* at 67-68.

{¶ 18}   In the case before us, Hudson was indicted in September 2007, and trial was originally set for November 2007.  The trial was continued at the request of the State and was rescheduled for January 2008.  It was then continued several times at the request of the defense, including one continuance that was based on the court's having granted defense counsel's motion to withdraw.

{¶ 19}   In April 2008, the trial court appointed new counsel for Hudson and set a trial date of June 4, 2008.  That trial date was also continued, because Hudson failed to appear.  The court learned at that time that Hudson was in the hospital after having crashed his vehicle while fleeing from authorities in Montgomery County.  At that point, the court ordered Hudson's bond forfeited and issued a warrant for his arrest.

{¶ 20}   The case was subsequently set for a jury trial on September 9, 2008.  However, on August 29, 2008, Hudson's counsel filed a motion asking the court to order a competency evaluation and examination.  Defense counsel expressed concern that Hudson might be of diminished mental capacity and could also have mental health issues that would affect his ability to assist in his own defense.  The trial court ordered a competency examination by the Forensic Psychiatry Center for Western Ohio, and scheduled a competency hearing for late October 2008.

{¶ 21}   At the competency hearing, the State stipulated to the findings in the report, and the defense stipulated only to the fact that if Dr. Thomas Martin appeared, he would testify as to

what was in the report. Defense counsel again expressed the concerns he had originally posed about Hudson's competency. The trial court noted, however, that Dr. Martin had prepared an eight-page report and had found Hudson competent to stand trial. The court stated that it had no reason to doubt the accuracy of Dr. Martin's findings, and it held that Hudson was competent to stand trial.

{¶ 22} On October 27, 2008, the court filed an entry reflecting its findings about Hudson's competency. The court also set a trial date of December 15, 2008. Subsequently, on December 9, 2008, Hudson filed a motion to continue the trial. Hudson noted that he had made a request in Montgomery County for a second competency evaluation and had been granted permission for a second opinion on the condition that he pay for it. Hudson further stated that his family had provided money for the evaluation, which had been scheduled with a doctor from Forensic Psychiatry of Southwestern Ohio. The trial court overruled Hudson's motion on December 11, 2008, and the trial went forward as scheduled.

{¶ 23} Hudson's counsel also raised the competency issue on the first day of trial. Defense counsel noted that Hudson had been examined on the preceding Saturday (December 13, 2008), and that the second competency report would be forthcoming. Defense counsel once more expressed concern about Hudson's competency. However, the trial court again overruled the motion. In particular, the court stressed the history of the case, which included Hudson's continued problems with any attorneys who represented him, as well as a suggestion in the original competency report that Hudson was malingering or purposely trying to cause problems in the case.

{¶ 24} The above facts indicate that the trial court did not act unreasonably, arbitrarily,

or unconscionably in refusing to continue the December 15, 2008 trial. As a preliminary matter, we note that the case had been pending for more than a year and had been continued several times, primarily at the request of the defense. Hudson was at fault in at least two situations, by failing to keep in contact with his attorney, and by failing to appear for trial because he had gotten injured while committing crimes in another county.

{¶ 25} Furthermore, the trial court did allow a competency evaluation, and Hudson failed to challenge either the examiner's neutrality or the specific content of the report.[2] Hudson also did not argue that the examination failed to comply with requirements for competency evaluations found in R.C. 2945.37 or R.C. 2945.371. Finally, Hudson waited until less than a week before trial to ask for a continuance, when the trial date had been set for about six weeks. At that point, the State had already issued subpoenas for its witnesses.

{¶ 26} The trial court did not abuse its discretion in refusing to grant a continuance. Hudson's first assignment of error is overruled.

III.

{¶ 27} Hudson's second assignment of error states:

THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO TWO FIREARM SPECIFICATIONS.

{¶ 28} In his second assignment of error, Hudson contends that the trial court erred in sentencing him for firearm specifications in connection with each felonious assault charge. Hudson argues that both charges arose from the same transaction, i.e., Hudson's restraint of

---

[2] The competency report was not filed with the trial court and is not in the record. However, the record reflects that the report was eight pages long and, as we noted, Hudson did not raise an objection to any specific content in the report. Hudson may have disagreed with the result, but there was no suggestion that the examination was flawed or incomplete in some way.

Delaney and driving Delaney in the truck.

{¶ 29}    At sentencing, the trial court imposed a sentence of eight years for each felonious assault charge, plus three years for the firearm specification on each charge, with the sentences to run consecutively.   Thus, the sentences for the felonious assaults totaled 16 years, plus six years total for the firearm specifications, resulting in a sentence of 22 years for these charges.

{¶ 30}    When the trial court imposed separate sentences for the firearm specifications, it stated that:

> Before I proceed with the disposition, I do want the record to be clear that the Court, in hearing the testimony of the victim, Mr. Delaney, the Court is of the impression, based upon the evidence that was presented, that the felonious assault occurred at separate times.   Or at least there was a significant period of time in between those two felonious assaults.   And, therefore, the Court's position, based on the evidence, is that the firearm specifications for those two felonious assaults would not merge.

{¶ 31}    At the time Hudson was sentenced in December 2008, R.C. 2929.14(D)(1)(a)(ii) provided for a prison term of three years for firearm specifications, if the specification charged the offender with "having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense[.]"[3]   R.C. 2929.14(D)(1)(b) further provided that "[a] court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section for felonies committed as part of the same act or transaction."

---

[3] This provision is now codified as R.C. 2929.14(B)(1)(a)(ii).

**{¶ 32}** "Transaction" has been defined as "'a series of continuous acts bound together by time, space and purpose, and directed toward a single objective.'" *State v. Wills*, 69 Ohio St.3d 690, 691, 635 N.E.2d 370 (1994), quoting *State v. Caldwell*, 9th Dist. Summit No. 14720, 1991 WL 259529, *12 (Dec. 4, 1991).[4] In determining whether felonies are committed as part of the same act or transaction, "[t]he test is not whether there was a separate animus for each offense; the appro[p]riate consideration is whether the defendant 'had a common purpose in committing multiple crimes' and engaged in a 'single criminal adventure.'" *State v. Like*, 2d Dist. Montgomery No. 21991, 2008-Ohio-1873, ¶ 40, quoting *State v. Adams*, 7th Dist. Mahoning No. 00 CA 211, 2006-Ohio-1761, ¶ 54, 57. (Other citation omitted.)

**{¶ 33}** In *State v. Walker*, 2d Dist. Montgomery No. 17678, 2000 WL 873222 (June 30, 2000), we concluded that even though the defendant's actions shared a common objective of escaping the police, they were not part of the same act or transaction, because they "clearly occurred at different times and in different places." *Id.* at *13. The defendant in *Walker* had a firearm in his possession while fleeing from police who were pursing him on Interstate 75 from Dayton toward Cincinnati. After the defendant arrived in downtown Cincinnati, he caused a traffic accident and seriously injured another motorist, while still in possession of the firearm. We concluded that the trial court had correctly refused to merge the firearm specifications for these charges against the defendant. *Id.* In this regard, we observed that "[t]he mere fact that [the offenses] share a common objective, escape from the police, is not sufficient to classify them as part of the same act or transaction." *Id.*

---

[4] *Wills* and *Caldwell* involved former R.C. 2929.71, a predecessor statute to R.C. 2929.14. R.C. 2929.71 was repealed by S.B.2 in 1996, and R.C. 2929.14 contains analogous provisions. The wording requiring the "same act or transaction" for purposes of merger has remained the same.

**{¶ 34}** We reached a similar conclusion in *State v. Twitty*, 2d Dist. Montgomery No. 18749, 2002-Ohio-5595. In *Twitty*, we noted that the defendant's conduct in attempting to flee from police in his vehicle was completed before he confronted, attempted to disarm, and assaulted two police officers. Thus, although the events may have been directed toward the same objective of evading capture, they "occurred at different times and in different locations" and "were not part of the same act or transaction for purposes of R.C. 2929.14(D)(1)(b) * * *." *Id.* at ¶ 130. Accordingly, the sentences should not be merged.

**{¶ 35}** In contrast, in *State v. Young*, 2d Dist. Montgomery No. 23642, 2011-Ohio-747, multiple gunshots were fired inside a bar in rapid succession. The case also involved multiple victims and resulted in felonious assault and murder convictions. We concluded that these actions were part of a single transaction for purposes of R.C. 2929.14(D)(1)(b). *Id.* at ¶ 55. As a result, we held that the trial court erred in imposing separate sentences for each firearm specification that accompanied the defendant's felonious assault and murder convictions. *Id.*

**{¶ 36}** In the present case, Hudson shot Delaney in the knee when he (Hudson) appeared to be upset over the possibility that Delaney had taken his pistol and had refused money. Hudson then drove around Springfield for quite some time before shooting Delaney a second time. The latter shooting appears to have been motivated by Hudson's anger over the fact that Delaney grabbed the steering wheel when it looked as if they were going to collide with another car. These two incidents did not involve the same objective, and they occurred at different times and in different locations, as with the incidents in *Walker* and *Twitty*. Accordingly, the trial court did not err by refusing to merge the firearm specifications for the two assault charges.

**{¶ 37}** Hudson's second assignment of error is overruled.

IV.

**{¶ 38}** Hudson's third assignment of error states:

THE CONVICTION OF TAMPERING WITH EVIDENCE, NAMELY A FIREARM[,] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 39}** In his third assignment of error, Hudson contends that his conviction for tampering with evidence (a weapon) was against the manifest weight of the evidence, because the gun was never found and one cannot infer, based on the facts, that Hudson intentionally threw it away during the chase.

**{¶ 40}** "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 41}** Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses.

*State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

**{¶ 42}** Hudson was charged in Count Three with tampering with evidence (a weapon), in violation of R.C. 2921.12(A)(1), which provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall . . . [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

**{¶ 43}** Delaney was shot twice, and he identified Hudson as the shooter. Delaney testified that when the police arrived at the Advance Auto parking lot, Hudson took the gun and got into his truck. Officer Lewis, who had arrived on the scene, also observed Hudson with his arm extended. The officer then saw Hudson putting something in his waistband. The police did not recover a weapon from the parking lot where Delaney and Hudson struggled over the gun. During the pursuit, the police lost sight of Hudson and the vehicle for a time, and later found him standing on a street corner. The police did not recover a weapon from Hudson, the truck, or anywhere. There is no question that the Appellant used a firearm in these felonies and that he apparently possessed it when he drove away from the parking lot; further, he did not have the weapon when he was arrested later after a foot chase.

**{¶ 44}** However, the "inability of law enforcement to find the gun used in a shooting by

itself does not show that the defendant 'altered, destroyed, concealed or removed' it." *State v. Beard*, 6th Dist. Wood No. WD-08-037, 2009-Ohio-4412, ¶ 18, citing *State v. Wooden*, 86 Ohio App.3d 23, 27, 619 N.E.2d 1132 (9th Dist. 1993). In *Beard*, the "state relied on a faulty syllogism: Witness saw [defendant] fire a gun. The gun was never found. Therefore, [defendant] must have tampered with the gun to make it unavailable as evidence against him." *Id.*, ¶ 20. *See also*, *e.g.*, *State v. Sims*, 2d Dist. Clark No. 2008 CA 92, 2009-Ohio-5875, ¶ 18-29; *State v. Spears*, 178 Ohio App.3d 580, 2008-Ohio-5181, 899 N.E.2d 188, ¶ 23-24 (2d Dist.); *Like*, 2d Dist. Montgomery No. 21991, 2008-Ohio-1873, at ¶ 24.

**{¶ 45}** In the view of a majority of this court, Hudson's conviction for tampering with evidence (weapon) was against the manifest weight of the evidence. The jury may well have concluded that the defendant disposed of the gun, but the manifest weight of the evidence did not support a finding that Hudson was guilty of tampering with evidence (weapon).

**{¶ 46}** Nevertheless, given that Hudson was convicted by a jury, we cannot reverse his conviction for tampering with evidence (weapon). Section 3(B)(3), Article IV of the Ohio Constitution provides, in part, that "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." This court is not unanimous regarding whether the manifest weight of the evidence supports or does not support Hudson's conviction for tampering with evidence (weapon). Accordingly, Hudson's conviction must stand.

**{¶ 47}** Hudson's third assignment of error is overruled.

V.

**{¶ 48}** Hudson's fourth assignment of error states:

THE TRIAL COURT ERRONEOUSLY SENTENCED APPELLANT TO CONSECUTIVE SENTENCES FOR TWO COUNTS OF FELONIOUS ASSAULT.

{¶ 49}   In his fourth assignment of error, Hudson contends that the trial court erred in sentencing him to consecutive sentences for the two counts of felonious assault.   In this regard, Hudson contends that the two offenses are allied offenses of similar import and were committed with the same animus.

{¶ 50}   R.C. 2941.25 provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 51}   "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."   *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at syllabus.   The Ohio Supreme Court explained:

Under R.C. 2941.25, the court must determine prior to sentencing whether

the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." * * *

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

(Citations and quotations omitted.) *Johnson* at ¶ 47–51.

{¶ 52}  A defendant who argues on appeal that the trial court erred by not merging multiple offenses bears the burden to show that the offenses are allied pursuant to R.C. 2941.25. *State v. Hale*, 2d Dist. Clark No. 11 CA 33, 2012-Ohio-2662, ¶ 24.

**{¶ 53}** Here, Hudson shot Delaney in the leg on two occasions while the two were driving together on September 14, 2007. Both actions by Hudson constituted felonious assault, and it is possible for these two identical offenses to have been committed by the same conduct.

**{¶ 54}** We therefore focus on whether the two shootings by Hudson constituted a single act with a single animus. The Ohio Supreme Court has interpreted the term "animus" to mean "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979); *see also*, *e.g.*, *State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, ¶ 42.

> "Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. * * * Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." *Logan* at 131, 397 N.E.2d 1345. "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13.

*Beverly* at ¶ 42.

**{¶ 55}** Under the facts of this case, Hudson's two felonious assaults were committed separately and he had a separate animus for each shooting. Although both shootings occurred while Hudson and Delaney were together in a vehicle, there was a significant delay between the first and second shooting. The record reflects that Hudson's "immediate motive" for the first shooting was anger over his belief that Delaney may have taken his gun and refused money.

After Hudson drove toward oncoming traffic, Hudson shot Delaney a second time in response to the fact that Delaney attempted to grab the steering wheel. Thus, the record demonstrates that Hudson's actions were committed separately and that he had a separate animus for each felonious assault. Accordingly, the two counts of felonious assault were not subject to merger under R.C. 2941.25.

{¶ 56}  Hudson's fourth assignment of error is overruled.

VI.  Conclusion

{¶ 57}  The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, J., concurring:

{¶ 58}  I concur with most of the majority opinion and affirmance, but very respectfully disagree with its conclusion that Hudson's Third Assignment of Error, but for a provision of the Ohio Constitution, should otherwise be sustained. I believe Hudson's conviction for Tampering With Evidence was not against the manifest weight of the evidence. As noted by the majority, a split decision by a court of appeals reversing a conviction resulting from a jury trial on the manifest weight of the evidence is unconstitutional pursuant to Section 3(B)(3), Article IV, Ohio Constitution. *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-493, 775 N.E.2d 498, ¶ 39; *State v. Broyles*, 5th Dist. Richland No. 2009CA0072, 2010-Ohio-1837. Therefore, Hudson's conviction for the same must be affirmed.

{¶ 59}  I very respectfully disagree with the majority on this issue for the following reasons. As we stated in *State v. Arthur Hill*, 2d Dist. Montgomery No. 25274, 2013-Ohio-2016,

¶ 16, the standard for review of Hudson's claim gives substantial deference to the trier of fact:

> "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 60}** The evidence shows that Hudson disposed of the firearm as he fled during a high speed chase from police after he had twice shot and threatened Delaney. The pistol was never found. Nonetheless, the jury may have reasonably inferred that Hudson intentionally threw it away during his flight in violation of the statute, to wit:

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or

investigation[.] R.C. 2921.12(A)(1).

{¶ 61}     The record contains no basis upon which to conclude that the jury clearly lost its way and created a manifest miscarriage of justice.   Instead, the evidence in the record indicates that Hudson possessed and disposed of the firearm in violation of the statute.

{¶ 62}     According to Delaney, when the police arrived, he (Delaney) let go of the gun, and Hudson took it.   The police officer who arrived on the scene also observed Hudson with his arm extended.   The officer then saw Hudson putting something in his waistband.   In addition, the police did not recover a weapon from the parking lot where Delaney and Hudson struggled over the gun.

{¶ 63}     During the pursuit, the police lost sight of Hudson's vehicle for a time, and then later found him standing on a street corner.   The police did not recover a weapon from Hudson or from the truck.   A reasonable inference from the facts is that Hudson disposed of the weapon at some point during the chase for the purpose prohibited by the statute, probably when the police lost sight of the vehicle.   As a result, I believe the conviction for Tampering with Evidence is not against the manifest weight of the evidence.

{¶ 64}     I would overrule Hudson's Third Assignment of Error on its merits.   For these reasons, I very respectfully disagree with the majority.   As a result of the reasoning expressed in this opinion, the Ohio Constitution requires that this conviction be affirmed.

. . . . . . . . . .

Copies mailed to:

Lisa M. Fannin
Adam James Stout

Hon. Douglas M. Rastatter