[Cite as *State v. Becks*, 2015-Ohio-4431.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**


| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-L-011** |
| DARTAVIA S. BECKS, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal from the Painesville Municipal Court, Case No. 14 CRA 02222.

Judgment: Affirmed.


*Ron M. Graham*, 6988 Spinach Drive, Mentor, OH 44060 (For Plaintiff-Appellee).

*Michelle M. French*, Law Offices of Michelle M. French, LLC, P.O. Box 293, Jefferson, OH 44047 (For Defendant-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Dartavia S. Becks, appeals the judgment of the Painesville Municipal Court convicting him on one count of misdemeanor assault after a bench trial. At issue is whether appellant's conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} Appellant was charged with assault, a misdemeanor of the first degree, in violation of R.C. 2903.13. Appellant plead not guilty, and a bench trial ensued. The trial

court heard two versions of what transpired over the course of a weekend in October 2014.

{¶3} The weekend began with Becks and his then-girlfriend K.M., the victim, deciding to spend a few nights at a hotel. K.M. testified that, prior to leaving for the hotel, Becks had purchased marijuana for her, which she had placed in her purse. After arriving at the hotel, they decided to leave. K.M. left her purse in the hotel room. Later, they were contacted by the hotel and were instructed to return as Becks' credit card had been declined. Furthermore, K.M. testified that the hotel staff complained the smell of marijuana was emanating from their room. According to K.M., upon returning to the hotel, Becks became belligerent with the hotel desk staff, and consequently, Mentor Police were called. Upset over the situation, K.M. left the hotel and waited outside while Becks remained in the hotel. A few minutes later, Becks returned to their vehicle with all of the belongings from the room, including K.M.'s purse containing the marijuana. Becks yelled that "he took responsibility for whatever was in that room."

{¶4} En route to Becks' residence, K.M. testified that while she was driving, Becks began to hit her in her right arm and face. K.M. testified that Becks hit her over twenty times while driving. Becks also kicked her leg. Becks ceased this behavior when they arrived at Becks' home, where he resided with his mother and step-father.

{¶5} Eventually, K.M. exited the vehicle only to be confronted by Becks in the yard, holding a pair of scissors. K.M. defended herself and, after a brief scuffle, was told by Becks to get in the house. K.M. complied and stayed with him for two days. She made no mention of Becks hitting her to Becks' mother, step-father, or his sister, who was visiting at the time. K.M. noted that she wore long-sleeved shirts to hide her

2

bruises. Becks had taken her phone, but she was, however, able to make a quick call to her brother, who persuaded her to leave. K.M. testified that she had suffered several bruises on her right arm and leg as a result of Becks hitting her, but she did not report the incident to the police until three days later.

{¶6} Officer Russell Tuttle of the Painesville Police Department testified that he spoke with K.M. and stated that K.M.'s injuries were consistent with her allegations; K.M. had bruising on her right arm and leg, which were photographed and admitted into evidence.

{¶7} The judge also heard from Becks. Becks testified they returned to the hotel because there was a request to pay an additional $100 deposit due to the smell of marijuana emanating from their room. Becks stated that he refused to pay the additional charge and told the hotel to call the police. When told by the police that they either had to pay the deposit or leave, he gathered their belongings and left.

{¶8} Becks testified he never hit K.M., either on their way back to his parents' house or at any time during their relationship. He acknowledged that K.M. had been upset prior to and after this incident, but it was because she had lost custody of her children. Becks and K.M. spoke about it over the weekend, and K.M. ultimately decided to leave Becks' residence and reunite with her children. Becks testified that he respected her decision and he considered their break-up amicable. Becks spoke with K.M. briefly on Sunday and was completely "flabbergasted" when the police arrived at his home a few days later.

{¶9} Becks' mother, stepfather, and sister also testified. Each stated they did not observe any bruising on K.M., even when she was wearing short-sleeved shirts and

3

shorts. Becks' mother further testified that K.M. was distraught and she spoke to K.M. regarding her situation with her children.

**{¶10}** Following a bench trial, appellant was found guilty and sentenced to 90 days in jail. Appellant filed a timely notice of appeal and asserts one assignment of error:

**{¶11}** "The trial court erred to the prejudice of the Appellant by convicting him of misdemeanor assault contrary to the manifest weight of the evidence."

**{¶12}** "'[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive.'" *State v. Hudson*, 2d Dist. Clark No. 2011 CA 100, 2013-Ohio-2351, ¶40, quoting *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶12. To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

**{¶13}** Becks argues the police failed to investigate K.M.'s claims of the alleged assault. Becks questions the veracity of K.M. because she claimed to have been pregnant at the time of the assault but refused to take a pregnancy test. As a result of

4

her inability to prove her pregnancy, the charge was reduced from a felony to a misdemeanor.

{¶14} Conversely, he argues his testimony, which was consistent with that of his mother, stepfather, and sister, supports the conclusion that K.M was not assaulted. Contrary to the testimony of Officer Tuttle, he claims no one observed any injuries to K.M.'s arms or legs, nor did K.M. say anything about the situation during her weekend stay at Becks' residence. Further, Becks argues that K.M.'s behavior following the alleged assault was not consistent with that of someone who had been assaulted.

{¶15} Reviewing the evidence admitted in this case, we cannot conclude the trier of fact lost its way in concluding appellant committed assault. While there is competing testimony, "[i]t is well-settled that when assessing the credibility of witnesses, '[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *State v. Grayson*, 11th Dist. Lake No. 2006-L-153, 2007-Ohio-1772, ¶31, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *Id.*, citing *Warren v. Simpson*, 2000 Ohio App. LEXIS 1073, 11th Dist. Trumbull No. 98-T-0183, *8 (Mar.17, 2000). "If the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." *Id.*, (citation omitted).

{¶16} The trier of fact was free to believe K.M.'s version of the events and the testimony of Officer Tuttle regarding the bruising on K.M.'s right leg and right arm. This bruising was depicted on the photographs taken at the police station and admitted into

5

evidence. Nothing in the record indicates the fact finder lost its way in finding appellant guilty of violating R.C. 2903.13. The record contained evidence from which the trial court could have found that Becks did knowingly cause or attempt to cause physical harm to K.M. Accordingly, the finding of guilt was not against the manifest weight of the evidence.

{¶17} Becks' sole assignment of error is without merit.

{¶18} For the foregoing reasons, the judgment of the Painesville Municipal Court is hereby affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.