[Cite as *State v. Hadding*, 2013-Ohio-643.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  2-12-14

      v.

BEN L. HADDING,                      O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2011-CR-169

**Judgment Affirmed**

Date of Decision:  February 25, 2013

APPEARANCES:

     *S. Mark Weller*  for Appellant

     *R. Andrew Augsburger*   for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Ben Hadding, appeals the Auglaize County Court of Common Pleas' sentence of nine years and eleven months imprisonment following a jury verdict finding him guilty of four counts of pandering obscenity involving a minor. Hadding argues the trial court erred when it found his offenses were not allied offenses of similar import. For the following reasons, we affirm.

{¶2} The present case stems from an incident that occurred on September 17, 2011. (Apr. 25, 2012 Tr. at 29-30). Hadding's eleven-year-old daughter, C.H., called law enforcement after an altercation with Hadding's girlfriend, Angiela McClure. (*Id.*). When the officers arrived, C.H. told them McClure had slapped her. (*Id.*). C.H. also informed the officers that she and McClure's thirteen-year-old daughter (at the time of the offense), S.M., had discovered a video camera she alleged Hadding had hid in the bathroom to videotape them coming out of the shower, and that the girls had caught him attempting to take photographs underneath their clothing while they were sleeping. (*Id.* at 31). While searching the house, the officers discovered a camera and a camcorder in Hadding's closet, and a videotape in the nightstand next to his bed. (Apr. 26, 2012 Tr. at 159-160). The officers also obtained Hadding's cell phone. (*Id.*). The nightstand videotape contained a recording of S.M. removing a towel and getting dressed after taking a shower. (Apr. 25, 2012 Tr. at 53). Hadding's cell phone

contained an image of fingers pulling underwear away from S.M., revealing her vagina. (Apr. 26, 2012 Tr. at 228).

{¶3} On November 17, 2011, the Auglaize County Grand Jury indicted Hadding on four counts of pandering obscenity involving a minor. (Doc. No. 1). Counts One and Three alleged Hadding had created obscene material involving a minor in violation of R.C. 2907.321(A)(1), felonies of the second degree, and Counts Two and Four alleged that Hadding possessed obscene material involving a minor in violation of R.C. 2907.321(A)(5), felonies of the fourth degree. (*Id.*).

{¶4} The trial court arraigned Hadding on November 22, 2011. (Doc. No. 11). Hadding pled not guilty to the charges. (*Id.*).

{¶5} On April 25-27, 2012, the trial court held a jury trial. (Doc. No. 86). The jury found Hadding guilty of all four counts of pandering obscenity involving a minor. (Doc. Nos. 81-84).

{¶6} On June 14, 2012, the trial court held a sentencing hearing. (Doc. No. 99). The trial court determined the offenses were not allied offenses of similar import and did not merge. (*Id.*). The trial court sentenced Hadding to seven years imprisonment on Count One, eighteen months imprisonment on Count Two, seven years imprisonment on Count Three, and seventeen months imprisonment on Count Four. (*Id.*). The trial court ordered Hadding to serve Counts One, Two, and

Four consecutively to each other and concurrently to Count Two, for a total sentence of nine years and eleven months imprisonment. (*Id*.).

{¶7} On July 13, 2012, Hadding filed a notice of appeal. (Doc. No. 116). Hadding now raises one assignment of error for our review.

### Assignment of Error

**The trial court erred when it failed to merge Count I with Count II and Count III with Count IV and sentenced the defendant on all four counts of the indictment.**

{¶8} In his sole assignment of error, Hadding argues the trial court erred when it determined that Count One did not merge with Count Two and Count Three did not merge with Count Four. Hadding contends that the possession and creation of the obscene material involving a minor are allied offenses of similar import because he could not create the photographs and videos without also possessing them. Hadding argues that since the offenses are allied offenses of similar import, the trial court erred when it failed to merge them. In response, the State argues that the trial court correctly determined that the offenses should not merge because Hadding had a separate animus for each offense. The State contends that Hadding continued to possess the photograph and video after creating them, which is evidence of a separate animus for the possession from the animus for the creation.

{¶9} Whether offenses are allied offenses of similar import is a question of law that this Court reviews de novo. *State v. Stall*, 3d Dist. No. 3-10-12, 2011-Ohio-5733, ¶ 15, citing *State v. Brown*, 3d Dist. No. 1-10-31, 2011-Ohio-1461, ¶ 36.

{¶10} R.C. 2941.25, Ohio's multiple-count statute, states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶11} In *State v. Johnson*, a plurality opinion, the Supreme Court of Ohio modified the analysis for determining whether offenses are allied offenses of similar import pursuant to R.C. 2941.25. 128 Ohio St.3d 153, 2010-Ohio-6314. First, the court must determine whether it is possible to commit both offenses with the same conduct. *Id*. at ¶ 48. "If the multiple offenses can be committed with the

same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., dissenting). If it is possible to commit the offenses with the same conduct and the defendant did, in fact, commit the multiple offenses with the same conduct, then the offenses are allied offenses of similar import and will merge. *Id.* at ¶ 50. However, "if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each, then according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶ 51.

{¶12} Hadding was convicted of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1) and (5). The statute states, in pertinent part, that:

(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

(1) Create, reproduce, or publish any obscene material that has a minor as one of its participants or portrayed observers;

* * *

(5) Buy, procure, possess, or control any obscene material, that has a minor as one of its participants;

* * *

{¶13} Hadding concedes that separate images, in this case the video and the cell phone image, are sufficient to establish separate acts requiring a sufficient animus. *See State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 93 ("Although defendant may have uploaded the ten images at around the same time, each file he uploaded constitutes a new and distinct crime."). However, Hadding argues that the two counts that apply to each item of obscene material should have merged because there was a single act and animus for each one. Hadding relies on the Eighth District's decision in *State v. Hendricks* to support his argument that the creation and possession of obscene material involving a minor in violation of R.C. 2907.321(A)(1) and (A)(5) are allied offenses of similar import. 8th Dist. No. 92213, 2009-Ohio-5556. In *Hendricks*, the Eighth District held that the two offenses were allied offenses of similar import because the creation of the obscene material would necessarily result in possession of that material. *Id*. at 33.

{¶14} While we agree with the *Hendricks* Court that it is possible to commit the two offenses with the same conduct, that is not the end of our inquiry. The Eighth District issued its opinion in *Hendricks* prior to the Ohio Supreme Court's decision in *Johnson*; consequently, the analysis this Court must apply is different from the analysis the Eighth District applied in *Hendricks*. Pursuant to *Johnson*, we must also determine whether Hadding committed the two offenses separately or with a separate animus. *Johnson* at ¶ 51. The Supreme Court of

Ohio has defined animus as "purpose, or more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979). If Hadding committed the two offenses separately or with a separate animus, then they are not allied offenses of similar import even though it is possible to commit the two offenses with the same conduct. *Id.*

**{¶15}** We agree with the trial court that Hadding had a separate animus for the creation and possession of the obscene material. During the trial, multiple witnesses testified that Hadding secretly created the obscene material and then continued to possess it. C.H. testified that she had observed Hadding take pictures of S.M. at night on multiple occasions. (Apr. 25, 2012 Tr. at 35-37). C.H. testified that on one night in particular, about a month or two before she called the police, she woke up at night "and I seen my dad about to walk into my room with his phone. He told me to go back to bed and I didn't. And then I heard him come in again so I squenced (sic) my eyes to see what was going on and he walked over to [S.M.]'s side and lifted up her tank top." (*Id.* at 35). C.H. testified that Hadding would also pull down C.H.'s tank top and that she saw Hadding enter their room to take pictures about three or four times. (*Id.* at 37). According to C.H., she had also discovered a video camera in the bathroom. (*Id.* at 31). C.H. testified that she gave the camera to S.M., who hid it, but that the girls subsequently found the camera hidden in the bathroom again. (*Id.* at 62).

{¶16} S.M. testified that since she was wearing her softball uniform in the video, it must have been taken in May or June 2011. (*Id*. at 100). S.M. testified that it appeared the camera had been hidden under C.H.'s bed in the room they shared. (*Id*. at 99). S.M. testified that the video showed her leaving her bedroom to go take a shower, returning in a towel, and then removing the towel to get dressed. (*Id*. at 100-102). S.M. also testified that the shorts and bedspread in the cell phone image belonged to her, that the image was of her vagina, and that she was unaware it had been taken. (*Id*. at 108-109). S.M. further testified that she had discovered a video camera hidden in the bathroom on multiple occasions. (*Id*. at 89-91).

{¶17} Law enforcement testified regarding the image of S.M. that they discovered on Hadding's cell phone. Detective James Holzapple testified that he obtained Hadding's cell phone and that Hadding indicated he had owned the phone for two or three months prior to September 17, 2011. (Apr. 26, 2012 Tr. at 177). Officer Kevin Delong testified that he processed Hadding's cell phone and discovered four images. (*Id*. at 198-204). Two images were created on August 30, 2011 at 10:39 p.m. and 11:31 p.m. (*Id*. at 204). The remaining two images were created on September 1, 2011 at 11:31 p.m. and September 12, 2011 at 11:08 p.m. (*Id*.). Detective Jerry Sawmiller testified that the image relevant to this case

was of fingers pulling underwear away from S.M. (*Id.* at 228). That image was one of the two created on August 30, 2011. (*Id.* at 247).

{¶18} After reviewing the evidence, we agree with the trial court that Hadding first created the video and cell phone image of S.M., and then continued to possess this obscene material until his arrest on September 17, 2011. We also find that Hadding had one animus, or improper motive, for initially creating the obscene material, and a separate animus for continuing to possess it after its creation. We note that the trial testimony established that Hadding created the video in May or June 2011 and the cell phone image on August 30, 2011, and possessed both obscene items until his arrest on September 17, 2011. The trial testimony also established that Hadding created the images by hiding a video camera in the girls' room and sneaking into the room at night to capture the cell phone image. The trial testimony further established that Hadding had made prior attempts to capture obscene material, which may or may not have been successful, by hiding a camera in the bathroom and sneaking into their bedroom on multiple occasions.

{¶19} We disagree with Hadding that his initial creation and then continued possession of the video and images constituted a single course of conduct lasting weeks, and even months. Rather, we find that Hadding had a separate motive to create the obscene material from his motive to continue to possess it for his

personal use, and that this separate animus results in separate offenses. The trial court correctly concluded that Hadding's offenses were not allied offenses of similar import and should not merge.

{¶20} Hadding's assignment of error is, therefore, overruled.

{¶21} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**