[Cite as *State v. Grissom*, 2014-Ohio-857.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

    Plaintiff-Appellee

v.

KHRYSTOPHER GRISSOM

    Defendant-Appellant

Appellate Case No.    25750

Trial Court Case No.   2012-CR-2996

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of March, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-appellant, Khrystohpher Grissom, appeals from his conviction and sentence in the Montgomery County Court of Common Pleas on one count of felonious assault, one count of discharging a firearm on or near a prohibited premises, one count of having a weapon while under disability, and two firearm specifications.   Grissom contends that there was insufficient evidence to support his convictions and that his convictions were against the manifest weight of the evidence.   He also contends that the trial court erroneously provided a jury instruction on flight and failed to merge allied offenses of similar import.   For the reasons outlined below, we affirm the judgment of the trial court.

### Facts and Course of Proceedings

{¶ 2}    On October 10, 2012, Grissom, who is known by the nickname "Jimmy," was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; one count of discharging a firearm on or near a prohibited premises in violation of R.C. 2923.162(A)(3),(C)(2), a third-degree felony; one count of having a weapon while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony; and two firearm specifications.   Grissom pled not guilty to all of the charges and the matter proceeded to a jury trial.   The following facts were elicited at trial.

{¶ 3}    On September 29, 2012, at approximately 11:30 p.m., Daniel Sammons was walking out of a Speedway gas station store on North Dixie Drive in Harrison Township, Ohio, when the door he used to exit the store grazed Grissom's arm.   Grissom, who had been standing outside and leaning his shoulder against the door, became angry after the door grazed him, and he began cussing at Sammons.   In response, Sammons looked at Grissom and walked away.   The

confrontation between Sammons and Grissom at Speedway is not in dispute.

{¶ 4}     Sammons, however, testified that as he walked away, Grissom came toward him and said: "I'm a shoot you up."  Trans. Vol. I, p. 158, ln. 2.  Additionally, Chris Watkins, a passenger sitting in Sammons's Jeep Liberty parked nearby, testified that he heard Grissom say "shoot you up" to Sammons in an escalated voice.  *Id*. at 206, ln. 11.  Thereafter, both Watkins and Sammons saw Grissom run and jump inside a maroon Ford Expedition parked nearby.  It is undisputed that Grissom was in the driver's seat of the Expedition and that Grissom followed Sammons's Jeep out of Speedway and onto North Dixie Drive.

{¶ 5}     Sammons and Watkins testified that Grissom sped up very close to the rear of Sammons's Jeep and changed lanes so that the Expedition was on the Jeep's driver's side.  Both men then heard a gunshot fire into the Jeep as they were driving.  Neither Sammons nor Watkins saw a gun, but Watkins testified that he saw a flash and could tell that the gunshot came from the front-seat area of the Expedition.  It is undisputed that there was a gunshot fired at the Jeep and that it came from somewhere inside the Expedition.

{¶ 6}     The gunshot shattered the rear window of Sammons's Jeep and hit the left side of the driver's seat.  In response to the gunshot, Sammons testified that he slammed on the brakes and called 9-1-1.  Additionally, both Sammons and Watkins testified that they followed the Expedition, which continued to drive away from them after the shot was fired.  Sammons and Watkins also testified that they pulled over after spotting a State Trooper on the side of the road, and that they told the officer what had happened.

{¶ 7}     Londell Johnson, a passenger in the Expedition driven by Grissom, testified that the Expedition belonged to his sister, who is Grissom's girlfriend.  Johnson testified that on the

night of the shooting, his brother, Lewis, and Grissom's friend, Jaye, were also riding as passengers in the Expedition. According to Johnson, Jaye was seated in the front-passenger seat and he and Lewis were in the back.

{¶ 8} Johnson also testified that when they went to Speedway, he, Grissom, and Lewis got out of the Expedition, and that Grissom was the last person to return to the vehicle. While Johnson did not see Grissom's confrontation with Sammons, he testified that Grissom returned to the Expedition and said: "Dude just bumped me." Trans. Vol. II, p. 242, ln. 12. When Johnson inquired who bumped him, Grissom pointed to Sammons's Jeep. Johnson testified that Grissom was the only person in the vehicle that got angry about the confrontation and that he and Lewis were trying to calm him down.

{¶ 9} In addition, Johnson testified that he heard a gunshot while they were riding beside the Jeep and that he heard someone say: "Watch out, little bro." *Id.* at 246, ln. 23. He further testified that the gunshot came from inside their vehicle, but that he did not see who fired the gun. After the gunshot, Johnson testified that Grissom drove away. At trial, Johnson's testimony regarding who fired the gun was impeached using a written statement that Johnson gave to police two days after the shooting. Johnson acknowledged that he wrote as part of his statement that, "Jimmy [a.k.a. Grissom] shot the gun." *Id.* at 262, ln. 10-11. Johnson further acknowledged that he had indicated in his statement that Grissom told him to say that Jaye had fired the gun. Furthermore, Johnson testified that he and the other passengers had no reason to shoot Sammons.

{¶ 10} At the end of trial, the trial court instructed the jury that it may find Grissom guilty of felonious assault and discharging a weapon on or near a prohibited premises if it finds

that the State proved beyond a reasonable doubt that Grissom was either the principal offender or an aider and abettor. Additionally, the trial court provided the jury with a flight instruction, explaining that fleeing the scene does not raise a presumption of guilt, but may tend to indicate a consciousness or awareness of guilt.

{¶ 11} Based on the testimony and evidence presented at trial, the jury found Grissom guilty of all charges. At sentencing, the trial court found that Grissom's convictions for felonious assault and discharging a weapon on or near a prohibited premises were allied offenses of similar import that merge. The State elected to proceed on the conviction for felonious assault for which the trial court imposed a prison term of six years. The two firearm specifications also merged, and Grissom received a prison term of five years for the firearm specifications. Additionally, the trial court imposed a prison term of 12 months for having a weapon while under disability. Grissom's sentences were ordered to run consecutively for a total prison term of 12 years.

{¶ 12} Grissom is now appealing from his conviction and sentence, raising four assignments of error.

## Assignments of Error Nos. I and II

{¶ 13} For purposes of convenience, we will address Grissom's first two assignments of error together. They are as follows:

I.

THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION

FOR ACQUITTAL SINCE THE STATE FAILED TO SUPPLY SUFFICIENT

EVIDENCE AS TO ALL THE ELEMENTS NECESSARY TO SUPPORT THE CHARGES AGAINST THE DEFENDANT.

II.

THE TRIAL COURT'S VERDICTS SHOULD BE REVERSED AS THEY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Under his first two assignments of error, Grissom argues that there was insufficient evidence to support his convictions and that his convictions were against the manifest weight of the evidence. In support of his argument, Grissom claims that the evidence presented at trial failed to establish that he was the shooter, or that he aided and abetted the shooter.

{¶ 15} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id*.

{¶ 16} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a

conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 18} " 'Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency.' " *State v. Hill*, 2d Dist. Montgomery No. 25274, 2013-Ohio-2016, ¶ 31, quoting *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. "As a result, 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *Id.*, quoting *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. Accordingly, we will address Grissom's first two assignments of error

by analyzing whether Grissom's convictions for felonious assault, discharging a firearm on or near a prohibited premises, and having a weapon while under disability were supported by the manifest weight of the evidence.

{¶ 19}   To support a conviction for felonious assault in violation of R.C. 2903.11(A)(2), the State is required to establish that Grissom did knowingly cause or attempt to cause physical harm to Sammons by means of a deadly weapon or dangerous ordnance.  A conviction for discharging a firearm on or near a prohibited premises in violation of R.C. 2923.162(A)(3),(C)(2) requires the State to establish that Grissom discharged a firearm upon or over a public road or highway and created a substantial risk of physical harm to any person or caused serious physical harm to property.

{¶ 20}   Additionally, to sustain a conviction for having weapons while under disability in violation of R.C. 2923.13(A)(3), the State is required to establish that Grissom knowingly acquired, carried, or used any firearm or dangerous ordnance, while he was "under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

{¶ 21}   We also note that pursuant to R.C. 2923.03, a defendant who joins with another to commit an offense may be charged either as a principal offender or as an aider and abettor, and that the trial court in this case instructed the jury that it may consider whether Grissom was the principal offender and/or an aider and abettor with respect to the charges for felonious assault and

discharging a weapon on or near a prohibited premises. Aiding and abetting means that "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 245, 754 N.E.2d 796 (2001). " 'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " *Id.*, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). An aider and abettor is "punished as if he were a principal offender." R.C. 2923.03(F).

{¶ 22} In this case, it is undisputed that Grissom had a confrontation with Sammons at the Speedway gas station, and that someone in Grissom's vehicle fired a bullet at Sammons's Jeep while traveling on a public roadway. It is also undisputed that the gunshot damaged Sammons's Jeep. We further note that Grissom stipulated that he was under a firearm disability during the September 29, 2012 shooting incident. Accordingly, the only fact in dispute is whether Grissom was the shooter or, alternatively, whether he aided and abetted the shooter.

{¶ 23} The State presented a significant amount of circumstantial evidence tending to prove that Grissom was the shooter. Specifically, the State established that Grissom: (1) directly threatened to shoot Sammons after Sammons bumped into him at Speedway; (2) was angry about Sammons bumping into him; (3) immediately followed Sammons's vehicle out of Speedway after threatening to shoot him; and (4) drove right beside Sammons's Jeep just prior to the gunshot being fired. Moreover, Watkins testified that the gunshot came from the front-seat area of the Expedition, which is where Grissom was located. Johnson also testified that he and the other passengers in the Expedition had no reason to want to shoot Sammons, and that he and his

brother, Lewis, were trying to calm Grissom down after Sammons bumped into him.

{¶ 24} In addition, Johnson acknowledged that he had given a written statement to police two days after the shooting claiming that Grissom was the shooter. Because Jonhson's trial testimony was inconsistent with his written statement, Grissom insists that the State failed to sufficiently prove that he was the shooter. However, as noted above, the weight and credibility of Johnson's trial testimony is for the jury to decide. The jury heard Johnson's testimony and saw his demeanor on the witness stand. Since the jury "is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *State v. Spears*, 178 Ohio App.3d 580, 2008-Ohio-5181, 899 N.E.2d 188, ¶ 12 (2d Dist.), quoting *Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 at *4. Nevertheless, even if we assume that the jury found Johnson's testimony credible, and believed that he did not see who shot the gun, there is still sufficient circumstantial evidence pointing to Grissom as the shooter.

{¶ 25} Although the evidence is largely circumstantial with respect to whether Grissom was the shooter and principal offender, the Ohio Supreme Court has stressed that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value" and "[i]n some instances certain facts can only be established by circumstantial evidence." (Citations omitted.) *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), superseded on other grounds by constitutional amendment, as stated in *State v. Smith*, 80 Ohio St.3d 89, 103, fn. 4, 684 N.E.2d 668 (1997). "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof

beyond a reasonable doubt." *Id.*

{¶ 26}   After weighing all of the evidence, reasonable inferences, and witness credibility, it cannot be said that the jury lost its way and created a manifest miscarriage of justice when it convicted Grissom of felonious assault, discharging a firearm on or near a prohibited premises, and having a weapon while under disability.   The circumstantial evidence combined with Johnson's inconsistent statements regarding the identity of the shooter are sufficiently compelling so that these verdicts are not against the manifest weight of the evidence.

{¶ 27}   Grissom's First and Second Assignments of Error are overruled.

**Assignment of Error No. III**

{¶ 28}   Grissom's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED IN GIVING AN INSTRUCTION ON FLIGHT

OVER DEFENSE OBJECTIONS.

{¶ 29}   Under his Third Assignment of Error, Grissom contends that the trial court erred in giving a jury instruction on flight when there was no evidence warranting such an instruction. The trial court instructed the jury as follows:

Testimony has been admitted indicating that the Defendant fled the scene. You are instructed that fleeing the scene alone does not raise a presumption of guilt.   But it may tend to indicate that Defendant's consciousness or awareness of guilt.   If you find that the facts do not support that the Defendant fled the scene, or if you find that there was some other motive [that] prompted the Defendant's conduct, or if you are unable to decide what the Defendant's motivation was, then

you should not consider this evidence for any purpose.

However, if you find that the facts support the– that the Defendant engaged in such conduct, and if you decide that the Defendant was motivated by consciousness or an awareness of guilt, you may but are not required to consider that evidence in deciding whether the Defendant is guilty of the crime charged. You alone will determine what weight if any to give to this evidence.   Trans. Vol. II, p. 378-379.

**{¶ 30}**  "When reviewing the trial court's jury instructions, the proper standard of review is whether the trial court's decision to give or exclude a particular jury instruction was an abuse of discretion under the facts and circumstances of the case."   (Citation omitted.)  *State v. Fair*, 2d Dist. Montgomery No. 24388, 2011-Ohio-4454, ¶ 65.   "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary."   (Citation omitted.)  *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.   An abuse of discretion includes a situation in which a trial court did not engage in a " 'sound reasoning process.' "  *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 31}**  A trial court's decision to instruct the jury on flight is not an abuse of discretion if the record contains sufficient evidence to support the charge.  *State v. Bass*, 10th Dist. Franklin Nos. 12AP-622, 12AP-623, 2013-Ohio-4503, ¶ 27; *State v. Lozada*, 8th Dist. Cuyahoga No. 94902, 2011-Ohio-823, ¶ 17; *State v. Villa*, 9th Dist. Lorain No. 05CA008773, 2006-Ohio-4529, ¶ 29; *see also United States v. Dillon*, 870 F.2d 1125, 1126-1127 (6th

Cir.1989). "Flight means some escape or affirmative attempt to avoid apprehension. It can take the form of fleeing from the police or eyewitnesses to changing or disguising one's physical characteristics after the fact." *State v. Wesley*, 8th Dist. Cuyahoga No. 80684, 2002-Ohio-4429, ¶ 19, citing *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1207 (10th Cir.1991). Evidence of flight is admissible as tending to show consciousness of guilt. *State v. Wood*, 2d Dist. Clark No. 2010 CA 42, 2011-Ohio-2314, ¶ 30. However, "[e]vidence of flight to support an inference of guilt should generally be limited to situations when the activities associated with flight occur at a time and place near the criminal activity for which the defendant is on trial." *Id.*, citing *State v. Frock*, 2d Dist. Clark No. 2004 CA 76, 2006-Ohio-1254, ¶ 57.

{¶ 32} After reviewing the record, we find that there was sufficient evidence to support a jury instruction on flight. It is undisputed that Grissom was driving the Expedition when the gunshot was fired at Sammons's Jeep. Johnson, Sammons, and Watkins also testified that the Expedition drove away after the gunshot. Moreover, Sammons and Watkins testified that the Expedition continued driving away as they attempted to chase it. From this evidence, a jury could conclude that Grissom affirmatively attempted to avoid apprehension by fleeing from eyewitnesses immediately after engaging in criminal activity. Accordingly, the trial court did not abuse its discretion when it instructed the jury on flight.

{¶ 33} Grissom's Third Assignment of Error is overruled.

**Assignment of Error No. IV**

{¶ 34} Grissom's Fourth Assignment of Error is as follows:

THE TRIAL COURT ERRED IN FAILING TO MERGE THE WEAPON

UNDER DISABILITY CHARGE INTO THE OTHER TWO CHARGES.

{¶ 35}   Under his Fourth Assignment of Error, Grissom contends that his conviction for having a weapon under disability should have merged with his convictions for felonious assault and discharging a weapon on or near a prohibited premises, claiming they are allied offenses of similar import under R.C. 2941.25.   Because Grissom's conviction for discharging a weapon on or near a prohibited premises merged with his felonious assault conviction, we only need to determine whether the trial court erred in failing to merge the weapons under disability offense with the felonious assault.

{¶ 36}   R.C. 2941.25 provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 37}   In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Supreme Court of Ohio held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."   *Id.* at syllabus [overruling *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699

(1999)]. In *Johnson*, the Supreme Court of Ohio also outlined a two-part framework for evaluating merger issues.

{¶ 38}  The first consideration "is whether it is possible to commit one offense and commit the other with the same conduct * * *." (Citation omitted. Emphasis in original.)  *Id*. at ¶ 48.  "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import."  *Id*.

{¶ 39}  If the first prong is satisfied, the next consideration is "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' "  *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting).  However, "if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."  *Id.* at ¶ 51.

{¶ 40}  The Supreme Court of Ohio has interpreted the term "animus" to mean "purpose or, more properly, immediate motive."  *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979); *see also, e.g., State v. Smith*, 7th Dist. Mahoning No. 11 MA 120, 2013-Ohio-756, ¶ 89; *State v. Harding*, 3d Dist. Auglaize No. 2-12-14, 2013-Ohio-643, ¶ 14; *State v. Cowan*, 8th Dist. Cuyahoga No. 97877, 2012-Ohio-5723, ¶ 37; *State v. LaPrairie*, 2d Dist. Greene No.2010-CA-09, 2011-Ohio-2184, ¶ 41. "Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. * * * Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori, commit another, then he may well possess but a single animus, and in

that event may be convicted of only one crime." *Logan* at 131. "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13.

{¶ 41} Ohio's Twelfth and Fifth Appellate Districts have concluded that while felonious assault and having a weapon while under disability may be committed simultaneously by the same conduct, they are still not allied offenses of similar import, because the animus for possessing a weapon while under disability is necessarily different from the animus for felonious assault. *See, e.g.*, *State v. Dillingham*, 12th Dist. Butler No. CA2011-03-043, 2011-Ohio-6348, ¶ 28; *State v. Elder*, 5th Dist. Richland No. 2011-CA-0058, 2011-Ohio-4438, ¶ 7-8. Specifically, "the animus of having weapons under disability is making a conscious choice to possess a weapon. Felonious assault requires a conscious choice to attack someone using a weapon." *Elder* at ¶ 7.

{¶ 42} Similarly, the First District has concluded that the offenses of murder and having a weapon under disability have a separate animus, despite being committed simultaneously, because murder requires a separate motive and intent to kill. *State v. Jones*, 1st Dist. Hamilton No. C-110059, 2011-Ohio-6633, ¶ 29-30; *compare State v. Brown*, 3d Dist. Allen No. 1-12-33, 2013-Ohio-854, ¶ 18 (finding that the offenses of burglary and having a weapon under disability were not subject to merger, despite being committed simultaneously, because the defendant continued to possess the firearm after he committed the burglary, which demonstrated a separate animus).

{¶ 43} However, in *State v. Fairman*, 2d Dist. Montgomery No. 24299, 2011-Ohio-6489, we addressed the issue of whether to merge a weapons under disability offense

with a simultaneous felonious assault in a different manner. In *Fairman*, the defendant encountered a man who the defendant believed murdered his nephew. *Id*. at ¶ 4. During the encounter, the defendant, who was under a firearms disability, requested and obtained a gun from an onlooker and then immediately shot the man in the chest. *Id*. at ¶ 4-5. Given that the evidence established that the defendant's immediate intent to possess the gun was solely for purposes of shooting the victim, we held that the felonious assault and the weapons under disability offenses were committed with the same animus. *Id*. at ¶ 67.

{¶ 44} Unlike *Fairman*, the record in the present case does not establish that Grissom acquired the gun immediately after his confrontation with Sammons. Instead, the record only establishes that Grissom acquired the gun at some point in time before the shooting incident. In addition, the record is devoid of any evidence establishing that Grissom acquired the gun with an immediate intent to fire at Sammons and that he had no other reason for acquiring the gun. We note that "[t]he defendant bears the burden to prove entitlement to merger." *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335, ¶ 134, citing *State v. Thomas*, 10th Dist. Franklin No. 10AP-557, 2011-Ohio-1191, ¶ 16. Here, Grissom failed to meet his burden of proof, as there is nothing in the record demonstrating that the felonious assault and weapons under disability offenses were committed with the same animus as in *Fairman*. Without any evidence to the contrary, we conclude that Grissom's choice to possess a gun while under disability was separate and distinct from his choice to fire the gun at Sammons. Accordingly, the offenses are not allied offenses of similar import subject to merger under R.C. 2941.25.

{¶ 45} Grissom's Fourth Assignment of Error is overruled.

**Conclusion**

{¶ 46} Having overruled all of Khrystopher Grissom's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, J., concurs.

HALL, J., concurring:

{¶ 47} The majority opinion cites *State v. Fairman*, 2d Dist. Montgomery No. 24999, 2011-Ohio-6489, for the proposition that a weapons under disability offense merges with a simultaneous commission of Felonious Assault. I agree that is the holding of *Fairman* and is the law of this district. However, I dissented in that case and continue to express my view that it is incorrect.

{¶ 48} Having a weapon under disability arises from the animus to possess a weapon when one is prohibited from doing so. The animus for felonious assault includes intent to attack another with a weapon. With different animi, the offenses do not merge. Additionally, the two offenses are committed by different acts committed at different times. An offender acquires a disability from having a firearm by activity completed long before the separate offense of assaulting someone with a deadly weapon. The earlier-acquired disability is an essential element of the offense. When different acts, committed in part at different times, constitute different offenses the offenses do not merge.

{¶ 49} Finally, ordinary logic leads me to the conclusion these offenses should not be merged. When two different offenders commit a felonious assault with a firearm, the one who is

prohibited from possessing the firearm in the first place is an entirely different offender than the one who has no firearm disability. I believe the legislature intended for them to be separately responsible for the offenses they commit, and the legislature did not intend for these offenses to merge.

{¶ 50} I concur however in the judgment here given the result that the offenses do not merge because the having a weapon under disability and the felonious assault were not simultaneous and the appellant has failed to prove entitlement to merger.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Marshall G. Lachman
Hon. Barbara P. Gorman