[Cite as *State v. Perry*, 2016-Ohio-4722.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26720 |
| v. | : | T.C. NO. 14CR1454 |
| | | (Criminal appeal from |
| TORREY D. PERRY | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |
| | : | |

**O P I N I O N**

Rendered on the ____30th____ day of _____June_____, 2016.

. . . . . . . . . . .

KIRSTEN A. BRANDT, Atty, Reg. No.   0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

LORI R. CICERO, Atty. Reg. No. 0079508, 500 E. Fifth Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

**{¶ 1}** This matter is before the Court on the Notice of Appeal of Torrey D. Perry, filed June 8, 2015.  Perry appeals from his May 12, 2015 Judgment Entry of Conviction, following a jury trial, on one count of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree (Count I), and one count of felonious assault (serious physical harm), in violation of R.C. 2903.11(A)(1), a felony of the second

degree (Count III), along with attendant firearm specifications. Perry waived his right to a trial by jury on one count of having weapons while under disability (prior offense of violence), in violation of R.C. 2923.13(A)(2), a felony of the third degree (Count II), and the court found him guilty of the offense. The court also found Perry guilty of repeat violent offender specifications attached to both felonious assault offenses. At sentencing, the court merged the felonious assault offenses, the State elected to proceed on felonious assault (serious physical harm) (Count III), and the court sentenced Perry to a mandatory term of eight years. The court further sentenced Perry to 36 months for having weapons while under disability, to be served consecutively to the felonious assault sentence. Finally, the court sentenced Perry to a mandatory term of ten years for a single repeat violent offender specification on Count III, to be served prior and consecutively to the definite term of imprisonment and consecutively to the mandatory three-year term for the firearm specification, for an aggregate sentence of 24 years. Perry argues herein that his sentence is contrary to law and constitutes cruel and unusual punishment. We hereby affirm the judgment of the trial court.

{¶ 2} Perry was indicted on June 13, 2014, and he entered a plea of not guilty on June 17, 2014[1]. On August 20, 2014, Perry executed the Waiver of Jury on Count II. On September 9, 2014, defense counsel filed a Motion for Leave to Withdraw which provides that a trial was held on August 18 - 20, 2014, resulting in a mistrial due to a hung jury.

---

[1] We note that Perry's indictment erroneously provides in the repeat violent offender specifications to counts I and III that Perry was previously convicted of aggravated murder, and it erroneously cites R.C. 2929.14(D)(2)(a) in those specifications. The indictment further erroneously provides in Count II that Perry was previously convicted of aggravated murder. At trial the State moved to orally amend the indictment to reflect that Perry was previously convicted of attempted murder and to correct the erroneously cited code sections to R.C. 2929.14(B)(2)(a). The court granted the motion.

The court granted the motion, and on September 11, 2014, the court appointed counsel to represent Perry. On March 25, 2015, the court issued an Entry of Mistrial without prejudice which provides: "1) there was a hung jury with a vote of eleven to one and no probability of the jury reaching a unanimous verdict; and 2) there was juror misconduct by the lone juror holdout." On August 16, 2015, Perry executed a second Waiver of Jury on Count II. Trial commenced on April 13, 2015.

{¶ 3} The victim herein, K.P., testified that she is 34 years old and has three children. She stated that she knew of Perry for two years and knew him personally for five or six months. K.P. stated that she and Perry became acquainted after they began working together as informants for Officer Warneke in Fayette County "to get the drugs off the streets." According to K.P., she began to suspect that Perry was not acting as an informant but rather was trafficking in heroin himself. She based her suspicion on a conversation she overheard about the need to move a "press" from Perry's basement to a "safe house" in Columbus. K.P. also testified that she became aware that Jeff Jackson "was selling Torrey's drugs."

{¶ 4} K.P. testified that on April 12, 2014, she went to the home of Jeff Jackson and advised him that "Torrey sent me there to pick up his drugs." She stated that Jackson then placed a phone call, and after "going back and forth" with the person on the other end of the call, handed the phone to her. K.P. stated that she recognized Perry's voice on the phone and that he told her to "get the f*** out of there and leave him alone and not to mess with it." She stated that she understood "that I found out something that I wasn't supposed to find out."

{¶ 5} According to K.P., on April 14, 2014, she was awakened in the afternoon by

a knock on her door. K.P. stated that she believed Perry was outside, and that she opened the door to let him in, subsequently discovering that an individual named "Booby" was there looking for Perry. She stated that she phoned Perry and told him that Booby was looking for him. K.P. stated that Perry told her he was in Dayton and asked her to pick him up there.

{¶ 6} K.P. stated that she borrowed a van and drove to Dayton, where she had difficulty ascertaining Perry's whereabouts. She stated that she eventually spoke to Perry on the phone, and that he told her that she had betrayed him. After sending Perry multiple text messages without response, she waited at an apartment complex where she expected to meet Perry. She stated that Perry eventually emerged from an apartment there and told her to leave. As she began to back her vehicle from a parking space, Perry raised a firearm and fired six shots, striking K.P. five times, according to her testimony. She stated that she was hit twice in the chest, twice in the stomach and once in the left arm. K.P. stated that she "had to have surgery. My intestines were cut. I lost part of my intestines, my bowels. I was diagnosed with PTSD. I'm ongoing with an orthopedic doctor right now. I have two bullets in my spine that's causing a lot of problems." She stated that she is unable to work due to ongoing back pain for which she takes medication. K.P. stated that she also sees a psychiatrist.

{¶ 7} At sentencing, the court indicated that it reviewed a presentence investigation report as well as "medical records regarding Mr. Perry provided by defense counsel from Day-Mont Behavior (sic) Health Care and the Methodist Hospital's Inc. of Indiana, as these documents relate to considerations of mitigation in sentencing." The court further indicated that it "also reviewed victim impact statements from the victim, her

family, letters of support for the Defendant provided by his counsel and the attorney's statements of Mr. Carter and Mr. Chadrick, State's counsel."  K.P. made a statement to the court, and the prosecutor directed the court's attention to the State's sentencing memorandum which indicates that Perry was previously incarcerated for 10 years for attempted murder.

**{¶ 8}**  The court indicated as follows:

Let me state for the record as well.  That regarding the medical records that were submitted by Mr. Carter, some of those records date from when Mr. Perry was 13 years of age.  The Day-Mont records are quite - - I'll use the term stale, may not be the best term in the world, but they've got some time on them.

I will say, also, for the record, that this matter was tried previously by Mr. Reed from Columbus who was retained counsel.  At no time did Mr. Reed on behalf of Mr. Perry make a motion to evaluate competency nor did Mr. Carter in this matter, neither counsel, both of whom are able and tried these cases ably, both the first one and the second one, neither pursued an insanity defense and from the Court's perspective and what I observe throughout its interface with Mr. Perry, as well as the trial of this matter (sic).

I see no reason to believe that counsel should have pursued either competency or an NGR-I plea and I believe that the medical records that have been submitted do not call into question what the Court is about to do.

I also would say for the record that the fact that this was a felonious assault trial with its various specifications as opposed to a murder trial was

entirely a matter of serendipity.

**{¶ 9}** After indicating that it considered "the purposes and principles of sentencing set forth in the revised code including avoiding unnecessary burden upon government resources, the seriousness and recidivism factors of the code that dictates with 29-29-13 * * * as well as the Defendant's present and future ability to pay financial sanctions, including any restitution," the court imposed sentence as set forth above for each offense and specification. The court then indicated as follows:

> Pursuant to the State versus Moore, Second District, 2015, Ohio, 13-27, the prison term for the firearm and the repeat violent offender specifications are to be served consecutively to each other and prior to the underlying eight-year mandatory prison term for a total mandatory prison term of 21 years on Count III and its attend[ant] specifications.

> Count III also carries with it a mandatory three-year period of post-release control.

> The Court orders that the prison term for Count II of 36 months and Count III of 21 years are also to be served consecutively to each other for a total prison term of 24 years.

> * * *

> In ordering consecutive sentencing on Counts II and III as announced today, the Court expressly finds as follows:

> Consecutive sentencing is necessary to protect the public from future crime, consecutive sentencing is necessary to punish the Defendant, and the Court finds consecutive sentences are not disproportionate to the

seriousness of the Defendant's conduct and to the danger he poses to the public and the Court expressly finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, the harm caused by the two or more multiple offenses were (sic) so great and unusual that no single prison term would adequately reflect the seriousness of the Defendant's conduct and the Court finds that his history of criminal conduct demonstrates the consecutive sentencing is necessary to protect the public from future crime by the Defendant.

In ordering consecutive sentencing on Count III and the repeat violent offender specification, the Court expressly finds as follows:

The Defendant has been convicted of the repeat violent offender specification set forth in 29-41.149.

Count III, felonious assault, serious physical harm is a second-degree felony, which offense involved in (sic) attempt to and resulted in serious physical harm to the victim, [K.P.].

The Court has imposed the maximum prison term for Count III, the Court finds that the maximum prison term for Count III is inadequate to punish the Defendant and to protect the public from future crime because the applicable factors of 292912 indicating a greater likelihood of recidivism outweigh the applicable factors indicating a lesser likelihood of recidivism, specifically, the Court wishes to mention as it relates to 292912, subsection D, that the Defendant has a history of criminal convictions, that's subsection two.

Subsection three, the Defendant has not previously, favorably responded to sanctions previously imposed for criminal conviction and in * * * subsection D, five, the Court finds that the Defendant has shown no genuine remorse for the offense.

The Court also expressly finds that the maximum prison term for Count III would demean the seriousness of this offense because the factors under 292912 indicating conduct normally constituting the offense are present and outweigh the factors indicating his conduct was less serious than normally constituting the offense, specifically referring to subsection B of 292912, the court finds that the victim of this offense suffered serious physical, psychological, and economic harm as a result of the offense and the Court finds subsection B, six, that the Defendant's relationship with the victim facilitated this offense and in particular indicates that, in essence, he lured her to the area at which time he shot her repeatedly.

Perry's Judgment Entry of Conviction reflects the court's findings at sentencing regarding maximum consecutive sentencing.

{¶ 10} Perry asserts one assignment of error herein as follows:

APPELLANT SHOULD BE REMANDED TO THE TRIAL COURT FOR SENTENCING AS THE SENTENCE HE RECEIVED IS CONTRARY TO LAW, AND IN VIOLATION OF HIS RIGHTS UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶ 11} Perry asserts as follows:

Mr. Perry contends that the record does not support the trial court's

maximum, consecutive sentences. Although some factors set forth in R.C. 2929.12(B) weigh in favor of a finding that Mr. Perry's conduct was more serious than conduct normally constituting the offenses, other factors exist tending to show that his conduct was less serious than conduct normally constituting the offenses. He further contends that his conduct did not warrant maximum, consecutive sentences, and that the imposition of such sentences violated the Eighth Amendment's prohibition on cruel and unusual punishment.

   * * *

  Mr. Perry asserts that the statutory findings by the Court and the 10-year prison term he received for being a repeat violent offender is contrary to law. Mr. Perry maintains that the prison terms contemplated by section (B)(2)(a)(iii) are adequate to punish him and to protect the public from future crime. He further argues that his likelihood of recidivism is outweighed by the factors indicating a lesser likelihood of recidivism and any sentence, without the repeat violent offender application, would not be demeaning to the seriousness of the offense and that * * * his conduct is less serious than conduct normally constituting the offense. The range of punishments available to the trial court was adequate to comply with the mandates of section 2929.12 without the additional discretionary provisions. * * * Mr. Perry offered in a sentencing memorandum that he was diagnosed and suffered from mental health disorders since a young age. Support of Mr. Perry's mental illness was provided to the State and the

Court prior to sentencing. Also, the victim acknowledged in her testimony at trial that she associated with people involved with selling drugs. * * * She believed Mr. Perry was selling drugs. * * * On April 12, 2014, two days prior to the incident where she was shot, she went to an individual's home to get drugs. * * * The victim admitted that when Mr. Perry learned that she was attempting to get drugs from the individual's home, he told her to leave the home, leave the man alone and not to mess with the situation. * * * Instead, the victim did not leave the situation alone but continued to involve herself with Mr. Perry. * * * She testified that * * * Mr. Perry believed that she betrayed him. * * * She called him repeatedly and texted him. * * * She knew that something was going on and people were looking for Mr. Perry. * * * Despite that knowledge she drove to Dayton and searched for Mr. Perry until she found him. * * * . Based upon the facts and circumstances of this case, maximum and consecutive sentences were not warranted and Mr. Perry demonstrated by clear and convincing evidence that his sentence was contrary to law. Mr. Perry's excessive sentences violate his Eighth Amendment rights.

{¶ 12} The State responds that "the trial court sentenced Perry within the applicable ranges for felonious assault, the firearm specification, the repeat violent offender specification, and having a weapon while under a disability."

{¶ 13} As this Court recently noted in *State v. McGlothan,* 2d Dist. Clark Nos. 2014-CA-120, 2014-CA-121, 2014-CA-122, 2015-Ohio-2713:

"The trial court has full discretion to impose any sentence within the

authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013–Ohio–2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011–Ohio–3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1, ¶ 38.

R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

R.C. 2929.12(B) sets forth nine factors indicating that an offender's

conduct is more serious than conduct normally constituting the offense; these factors include whether the physical or mental injury to the victim was exacerbated because of the physical or mental condition of the victim, serious physical, psychological, or economic harm suffered by the victim as a result of the offense, whether the offender's relationship with the victim facilitated the offense, and whether the offender committed the offense for hire or as a part of an organized criminal activity. R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense, including whether the victim induced or facilitated the offense, whether the offender acted under strong provocation, whether, in committing the offense, the offender did not cause or expect to cause physical harm to any person or property, and the existence of substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record.

"On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * *

\* of the Revised Code.' " *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659, ¶ 28. In *State v. Rodeffer*, 2013–Ohio–5759, 5 N.E.3d 1069 (2d Dist.), we held that we would no longer use an abuse of discretion standard in reviewing a felony sentence, but would apply the standard of review set forth in R.C. 2953.08(G)(2). [footnote omitted]

Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *Rodeffer* stated that "[a]lthough [*State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124] no longer provides the framework for reviewing felony sentences, it does provide * * * adequate guidance for determining whether a sentence is clearly and convincingly contrary to law. * * * According to *Kalish*, a sentence is not contrary to law when the trial court imposes a sentence within the statutory range, after expressly stating that it had considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the factors in R .C. 2929.12." (Citations omitted.) *Rodeffer* at ¶ 32.

*McGlothan*, ¶ 9-13. *See also State v. Marcum*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-1002.

{¶ 14} R.C. 2929.14(C)(4) grants a sentencing judge discretion to impose consecutive sentences as follows:

If multiple prison terms are imposed on an offender for convictions of

multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 15} The record reflects that the court considered the factors set forth in R.C. 2929.11 and R.C. 2929.12. It was significant to the court that K.P.'s relationship with Perry facilitated the offense, in that he lured her to the scene of the shooting, and that she suffered serious physical, psychological, and economic harm. R.C. 2929.12(B)(2),(6). It was further significant to the court that Perry has a history of criminal convictions, that

he has not responded favorably to sanctions previously imposed, and that he lacked remorse. R.C. 2929.12(D)(2),(3),(5).

{¶ 16} The maximum sentence for Perry's felonious assault offense, a felony of the second degree, is eight years, and it is a mandatory sentence.   R.C. 2929.14(A)(2), R.C. 2929.13(F)(6). The maximum sentence for having weapons while under disability, a third degree felony, is 36 months.   R.C. 2929.14(A)(3)(b). Perry was subject to a mandatory three-year sentence for the firearm specification. R.C. 2929.14(B)(1)(a)(ii). Finally, he was subject to a mandatory term of one to ten years for the repeat violent offender specification.   R.C. 2929.14(B)(2)(a)(i). Perry's sentences are within the applicable statutory ranges.

{¶ 17}   R.C. 2929.14(B)(2)(d) requires that the sentence imposed on the repeat violent offender specification be served "consecutively to and prior to the prison term imposed for the underlying offense."   R.C. 2929.14(C)(1)(a) requires that the sentence on the firearm specification be served "consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender."

{¶ 18}   We note that Perry's felonious assault and having weapons while under disability offenses are not subject to merger.   *State v. Grissom*, 2d Dist. Montgomery No. 25750, 2014-Ohio-857, ¶ 44 (noting that it is defendant's burden to prove entitlement to merger, and that where the record is devoid of evidence establishing that the defendant acquired the weapon with an immediate intent to fire it at the victim and had no other reason for possessing the weapon, that burden is not satisfied).

{¶ 19} In imposing consecutive sentences for felonious assault and having weapons while under disability, the record reflects that the court made the findings required by R.C. 2929.14(C)(4). Having reviewed the record, we cannot clearly and convincingly find that it does not support those findings. As the court found, Perry committed felonious assault and having weapons while under disability as part of one or more courses of conduct, and the record supports the finding that the harm to K.P. was so great that no single prison term for the offenses would adequately reflect the seriousness of Perry's conduct; K.P. was shot five times, she required abdominal surgery, bullets remain in her spine causing ongoing medical problems and pain, she suffers from PTSD as a result of the incident, and she is unable to work. Perry's criminal history supports the court's finding that consecutive sentences are necessary to protect the public from future crime by Perry; as reflected in Perry's indictment and pre-sentence investigation report, Perry was convicted of attempted murder in 1997. He has a lengthy misdemeanor record including criminal possession of a controlled substance, domestic violence, drug abuse, menacing and possession of drugs. In 1994 he was sentenced to prison for criminal possession of a controlled substance, a felony of the third degree. We note that at the sentencing hearing Perry admitted that he was selling drugs at the time of the incident.

{¶ 20} Finally, Perry's arguments that his mental illness mitigates the seriousness of the offenses, and that K.P. essentially put herself in harm's way by associating with him and other drug dealers, and by pursuing him to Dayton despite her suspicion that "something was going on," lack merit. The court indicated that it considered the medical records provided by Perry (for the first time prior to sentencing at the conclusion of his

second trial) but determined that they were outdated. K.P.'s allegedly poor judgment in associating with Perry does not make less serious the fact that Perry lured her, a mother of three, to Dayton, thereafter firing multiple shots at her as she attempted to leave the scene, causing serious physical, psychological and economic harm and ongoing health problems and pain. Finally, we conclude that since Perry's sentences are authorized by statute and supported by the record, they do not constitute cruel and unusual punishment.

{¶ 21} For the foregoing reasons, Perry's assigned error lacks merit, and it is overruled. The judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Kirsten A. Brandt
Lori R. Cicero
Hon. Steven K. Dankof